IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ELITE PRINT GROUP, INC.,

     Plaintiff,

vs.                                                                              CASE NO. CV-08-J-1346-S

CAPITAL LIGHTING
FIXTURE COMPANY and
JOHN A. LEWIS, JR.,

     Defendants.

## MEMORANDUM OPINION

Pending before the court are cross-motions for summary judgment. Plaintiff filed a motion for summary judgment and evidentiary submissions (doc. 21) and a brief in support of said motion (doc. 22). Defendants filed a motion for summary judgment (doc. 23) and a brief in support of said motion and evidentiary submissions (doc. 24). Plaintiff filed a response and evidentiary submissions (doc. 25), and defendants filed a response and evidentiary submissions (doc. 26). Plaintiff filed a reply and evidentiary submissions (doc. 27), and defendants filed a reply (doc. 28).

Having considered all the pleadings and submissions, the court concludes that plaintiff's motion for summary judgment is due to be granted as no genuine issues of material fact remain and plaintiff is entitled to a judgment in its favor as a matter of law.

### I. Procedural History

Plaintiff Elite Print Group, Inc. ("Elite") filed a complaint (doc. 1) against defendants Capital Lighting Fixture Company ("Capital") and John A. Lewis, Jr., alleging breach of contract under the Uniform Commercial Code ("UCC") and that defendant Lewis personally guaranteed the obligations of defendant Capital. Defendants filed an answer and counterclaim (doc. 8), asserting that plaintiff produced and delivered materially deficient catalogs to defendants, resulting in breach of contract.

### II. Factual Background

Elite, a business providing commercial print services, Crowder depo. at 21, Exhibit A to Plaintiff's Summary Judgment, began negotiating in 2006 with Capital regarding Capital's upcoming 2007 catalog, Champlin depo. at 50-51, Exhibit D to Plaintiff's Summary Judgment. Capital manufactures and sells wholesale lighting fixtures and uses annual catalogs to market its products. Mary Lou Lewis depo. at 12, 14, Exhibit C to Plaintiff's Summary Judgment. On September 6, 2006, Elite and Capital entered into a contract for the production of 90,000 large catalogs, consisting of three issues of 30,000 each. First Contract, Exhibit E to Plaintiff's Summary Judgment. Capital later informed Elite that it wanted to increase the page count of the catalog from 304 pages to 352 pages, and it wanted to purchase a mini catalog in

addition to the large catalog. Crowder depo. at 98, Exhibit 13 to Defendants' Summary Judgment. The revised contract included the page increase, the production of 90,000 large catalogs, consisting of three issues of 30,000 each at a cost of $178,650.00, and the production of 90,000 mini catalogs, consisting of three issues of 30,000 each at a cost of $92,775.00. Revised Contract, Exhibit F to Plaintiff's Summary Judgment. Elisa Crowder, the owner of Elite, Crowder depo. at 6, Exhibit A to Plaintiff's Summary Judgment, signed the contract on November 2, 2006, and John Lewis, Capital's President, John Lewis depo. at 8, Exhibit B to Plaintiff's Summary Judgment, signed the contract on November 3, 2006. Revised Contract, Exhibit F to Plaintiff's Summary Judgment.

The opening paragraph of the contract stated that Elite had "received substantially discounted pricing based upon the volume of 3 issues, 90,000 total copies." *Id.* A quantity of "30M" was listed under the specifications for the large catalog, but a total of "90M (30M PER ISSUE)" was listed beside the total cost of $178,650.00. *Id.* Similarly, "30M" was also the quantity provided for the mini catalog, but a total of "90M (30M PER ISSUE)" was listed beside the total cost of $92,775.00. *Id.*

Elite presented the first samples of the catalog to Mr. Lewis, who expressed concern regarding the color quality of some of the images. Champlin depo. at 77,

Exhibit D to Plaintiff's Summary Judgment. As a result of such complaints, Elite agreed to reprint certain pages of the large catalog at Capital's expense. John Lewis depo. at 127, Exhibit B to Plaintiff's Summary Judgment. Following the reprints, the bulk of the 30,000 large catalogs were printed, bound, and shipped to Capital by mid-February 2007. *Id.* at 135-36. Elite then delivered the mini catalogs to Capital, and Mr. Lewis had no issue with the quality or color of the finished product. *Id.* at 139-40. Capital paid Elite the full contract price for the color corrections, the 30,000 large catalogs for 2007, and the 30,000 mini catalogs for 2007. Crowder depo. at 121, Exhibit 20 to Defendant's Summary Judgment.

In June 2007 Mary Lou Lewis, Capital's Vice President, Mary Lou Lewis depo. at 10, Exhibit C to Plaintiff's Summary Judgment, informed Ms. Crowder that Capital was not pleased with the catalog and had decided to employ a Chinese business with lower pricing to produce their catalogs, Crowder depo. at 133, Exhibit A to Plaintiff's Summary Judgment. Ms. Crowder then spoke with Mr. Lewis, who confirmed Capital's decision and told Ms. Crowder that Capital was currently working with another business for the next year's catalog. *Id.* at 135. Of the total 60,000 large and mini catalogs that Elite delivered to Capital in 2007, Capital used all except approximately 1,500 catalogs. John Lewis depo. at 68-69, Exhibit B to Plaintiff's Summary Judgment.

### III. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; Fed.

R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(e); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991). However, the court should not make credibility determinations, nor weigh the parties' evidence. *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).

6

## IV. Legal Analysis

*Capital Breached the November 2006 Installment Contract by Refusing to Purchase the Remaining 120,000 Catalogs*

The court has jurisdiction pursuant to 28 U.S.C. § 1332. Since the court has diversity jurisdiction and the amount in controversy is satisfied, it must apply Alabama law. *Technical Coating Applicators, Inc. v. U.S. Fidelity and Guar. Co.*, 157 F.3d 843, 844 (citing *Insurance Co. of N. Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991)). Under Alabama law, several general rules govern the court's interpretation of the contract at issue. "If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment." *McDonald v. U.S. Die Casting and Development Co.*, 585 So.2d 853, 855 (Ala. 1991). "The court will enforce clear and unambiguous contracts pursuant to their terms." *Tidwell v. Pritchett-Moore, Inc.*, 2008 WL 5265150, *3 (Ala. Civ. App. 2008) (citing *Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc.*, 873 So.2d 1091, 1098 (Ala. 2003)). Additionally, "[i]n construing a contract, the primary concern of the court is to ascertain the true intent of the parties." *Gwaltney v. Russell*, 984 So.2d 1125, 1131 (Ala. 2007) (citing *Parr v. Godwin*, 463 So.2d 129 (Ala. 1984)). "The court will give a natural meaning to the words in a contract so that all

provisions of the contract are given a reasonable interpretation." *Shadrick v. Johnston*, 581 So.2d 805, 810 (Ala. 1991) (citing *Federal Land Bank of New Orleans v. Terra Resources, Inc.*, 373 So.2d 314 (Ala. 1979)).  Similarly, the court must "interpret a contract as to reconcile and to enforce all of its terms and not to ignore or to disregard any of its terms so long as such an interpretation is not patently unreasonable." *Bruce v. Cole*, 854 So.2d 47, 55 (Ala. 2003) (citing *Yu v. Stephens*, 591 So.2d 858 (Ala. 1991); *Federated Guar. Life Ins. Co. v. Dunn*, 439 So.2d 1283 (Ala. Civ. App. 1983)).

Defendants assert that the November 2006 contract between Elite and Capital obligated Capital to purchase 30,000 large and 30,000 miniature catalogs for 2007 only, not 2008 and 2009.  Defendants' Summary Judgment Brief at 8, 10. Defendants further argue that the contract provides specifications for the 2007 catalogs only, and there is no reference to 2008 or 2009 in the contract.  *Id.* at 11-12.  Therefore, defendants state that they fulfilled their contractual obligations, and the November 2006 contract did not anticipate future deliveries.  Defendants' Reply Brief at 6.  This court disagrees and finds that the terms of the contract plainly and unambiguously provide for the delivery of additional installments regarding both the large and mini catalogs.

The introductory paragraph to the November 2006 contract states that Elite

8

"received substantially discounted pricing based upon the volume of 3 issues, 90,000 total copies." Revised Contract, Exhibit F to Plaintiff's Summary Judgment. The contract then states that "current pricing includes complete plate changes *for each new issue*." *Id.* Located beside the total price of the large catalogs is the term: "90M (30M PER ISSUE)." *Id.* This term also appears beside the total price of the mini catalogs. *Id.* If the court concluded that only 30,000 large and 30,000 mini catalogs were contracted for, it would be rewriting the parties' contract by ignoring the additional 60,000 large catalogs and 60,000 mini catalogs that are clearly provided for due to the multiple "issue" references and the phrase, "90M (30M PER ISSUE)." *See Gwaltney*, 984 So.2d at 1133 (stating that "'[t]here cannot be a departure from the words of a written contract [;] they must have their full import and force'") (quoting *Ingalls Iron Works Co. v. Ingalls*, 53 So.2d 847, 849 (Ala. 1951)). Although the contract does not reference future delivery dates, Alabama's version of the UCC states that "[e]ven though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." Ala. Code § 7-2-204(3); *H.C. Schmieding Produce Co., Inc. v. Cagle*, 529 So.2d 243, 248 (Ala. 1988). Here, the facts indicate that the parties intended to make a contract. There can be no dispute that additional installments were also intended by including the phrase, "90M

9

(30M PER ISSUE)." *See* 15 Williston on Contracts § 45:2 (4th ed. 2009) (stating that "if a contract permits or requires the seller to deliver fewer than all of the goods at one time, the contract may be classified as an installment contract despite the lack of a regular shipment schedule") (citing *Autonumerics, Inc. v. Bayer Industries, Inc.*, 696 P.2d 1330, 1338 (Ariz. Ct. App. 1984)). The contract specifically states that the pricing of the catalogs was discounted based on the volume of 3 issues. Revised Contract, Exhibit F to Plaintiff's Summary Judgment. The November 2006 contract is an installment contract under the UCC, and Capital breached such contract when it informed Ms. Crowder that it intended on doing business with another publishing company[1] and thereby failed to purchase the remaining 120,000 catalogs[2] from Elite provided for in the contract.

*Elite is Entitled to Summary Judgment on Defendants' Breach of Contract Counterclaim*

Defendants asserted a counterclaim against Elite for breach of contract, stating that Elite produced and delivered catalogs "that were materially deficient and failed

---

[1] Additionally, the November 2006 contract states that "[n]o agreement is subject to cancellation or to change by Buyer unless agreed to in writing by a duly authorized representative of Seller." Revised Contract, Exhibit F to Plaintiff's Summary Judgment. Elite never agreed to cancel such contract.

[2] 120,000 is the grand total for the remaining issues, which consists of 60,000 large catalogs and 60,000 mini catalogs. *See* Revised Contract, Exhibit F to Plaintiff's Summary Judgment.

to meet the specifications outlined in the contract." Defendants' Counterclaim at ¶ 5, doc. 8. The evidence, however, does not support these allegations. Defendants never requested that Elite remedy any deficiencies in the catalogs or replace the catalogs. John Lewis depo. at 133, Exhibit B to Plaintiff's Summary Judgment. It was not until June 2007 that Capital informed Ms. Crowder that it was unhappy with the catalogs. Crowder depo. at 133, Exhibit A to Plaintiff's Summary Judgment. Capital still used all of the 60,000 large and mini catalogs with the exception of approximately 1,500 catalogs. John Lewis depo. at 68-69, Exhibit B to Plaintiff's Summary Judgment. Capital's extended use of the product and its failure to notify Elite of its concerns do not support the breach of contract counterclaim. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 303 (Ala. 1999)). Here, Capital's decision to use the product and not inform Elite of any deficiencies is evidence that Elite performed accordingly under the contract and Capital suffered no damages. As a result, Elite is entitled to summary judgment on defendants' breach of contract counterclaim.

*John Lewis is Individually Liable for Breach of the Obligations of Capital Pursuant to the Signed Personal Guaranty*

Capital's president, John Lewis, signed the contract at issue on November 3, 2006. Revised Contract, Exhibit F to Plaintiff's Summary Judgment. In executing the agreement, he "unconditionally guarantee[d] the obligations of Buyer [Capital] hereunder, including without limitation, the obligation of payment." *Id.* Mr. Lewis also testified that he understood that by signing the guaranty provision in the contract he was unconditionally guarantying the obligations of Capital. John Lewis depo. at 110, Exhibit B to Plaintiff's Summary Judgment. The terms of the personal guaranty are clear and plain, and therefore "the construction and legal effect of the guaranty are questions of law for the court." *Dozier v. Patterson Co., Inc.*, 648 So.2d 610, 612 (Ala. Civ. App. 1994) (citing *Moody v. Schloss & Kahn, Inc.*, 600 So.2d 1045 (Ala. Civ. App. 1992)). Because Capital has failed to honor its obligations to Elite under the November 2006 contract, Mr. Lewis is personally liable to Elite for such obligations.

## V. Conclusion

Having considered the foregoing and finding that defendants have failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that plaintiff's motion for summary judgment (doc. 21) be

and hereby is **GRANTED**, and defendants' motion for summary judgment (doc. 23) be and hereby is **DENIED**.  The court shall so rule by separate Order.

**DONE** and **ORDERED** this 16${}^{th}$ day of July 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE